WEITZ COMPANY, LLC, an Iowa
Limited Liability Company,
Plaintiff–Appellant,

v.

MID–CENTURY INSURANCE COM-
PANY, a California Corporation,
Defendant–Appellee.

No. 06CA0163.

Colorado Court of Appeals,
Div. III.

Aug. 9, 2007.

Certiorari Denied April 7, 2008.

Sherman & Howard, L.L.C., Charlotte Wiessner, Bret R. Gunnell, Katherine D. Varholak, Denver, Colorado, for Plaintiff–Appellant.

Lambdin & Chaney, LLP, Suzanne Lambdin, Laura Trask Schneider, Denver, Colorado, for Defendant–Appellee.

Holley, Albertson & Polk, P.C., Dennis B. Polk, Eric E. Torgersen, Golden, Colorado, for Amicus Curiae Colorado Association of Home Builders.

Zupkus & Angell, P.C., Richard L. Angell, Denver, Colorado, for Amicus Curiae Colorado Defense Lawyers Association.

Opinion by Judge ROY.

Plaintiff, Weitz Company, LLC (the general contractor), appeals the trial court's summary judgment in favor of defendant, Mid-Century Insurance Company, a Farmers Insurance Group company (the insurer). The controlling question on appeal is whether an additional insured endorsement, limiting the additional insured's coverage to "ongoing operations," includes "completed operations" or "completed work" coverage. We answer the question in the negative and affirm the trial court's judgment.

In September 1998, a developer-owner hired the general contractor to construct an office building in Littleton, Colorado (the project). The general contractor contracted with RK Mechanical, Inc. (the subcontractor) to install the plumbing, heating, and air conditioning systems, including the roof and perimeter drains.

The subcontract required that the subcontractor procure a commercial general liability insurance policy written on an occurrence basis, covering completed operations, and listing the general contractor as an additional insured "using [Insurance Services Offices, Inc. (ISO)] additional insured endorsement (CG 20 10), edition date 10/93, or its equivalent." In addition, the contract required "[s]ubcontractor [to] continue this coverage for at least 2 years following final payment to Contractor in connection with the Project."

The subcontractor commenced work on or about October 27, 1998, and completed its work no later than June 3, 1999, when a certificate of occupancy for the building was issued. On November 11, 1999, the property owner observed property damage allegedly

related to water intrusion, including the heaving of floor slabs and the resulting damage to drywall and floors.

The subcontractor purchased the commercial general liability policy at issue here from the insurer following the completion of the project in apparent compliance with its obligation to continue coverage for two years following final payment. The subcontractor's insurance policy in effect during construction, if any, is not before us.

The policy had a policy period "from 4/30/00 ... to 4/30/01"; insured the subcontractor for "completed operations"; and included an additional insured endorsement (CG 20 10), edition date 10/93 (the endorsement). The endorsement states: "WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, *but only with respect to liability arising out of your ongoing operations performed for that insured.*" (Emphasis added.) The endorsement is promulgated by the Insurance Services Office (ISO), which is an insurance industry-supported organization that develops standard insurance policy language. 4 Phillip L. Brunner & Patrick J. O'Connor, Jr., Construction Law § 11:6, at 1921 (2002).

Approximately two years after completion of the subcontractor's work, the property owner filed an action against the general contractor alleging construction defects. The subcontractor was not named in that action, and the general contractor did not add or join it. Following the general contractor's tender of defense, the insurer agreed to defend with reservations. Notwithstanding the insurer's limited offer, general contractor was defended and indemnified by its own commercial general liability insurer, and that matter settled.

The general contractor then commenced these proceedings asserting claims for breach of contract, bad faith breach of insurance contract, and deceptive trade practices against three subcontractors, including the subcontractor, and their respective commercial general liability carriers, including the insurer. The subcontractor was, by stipulation, dismissed with prejudice.

The insurer filed a motion for summary judgment asserting that there was no coverage because the endorsement was limited to "ongoing operations" and, therefore, did not include coverage for claims arising out of the subcontractor's completed work or operations. The trial court granted the motion.

### I. Standard of Review

Summary judgment is appropriate when the pleadings, affidavits, depositions, or admissions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Cung La v. State Farm Auto. Ins. Co.,* 830 P.2d 1007, 1009 (Colo.1992). We review a grant of summary judgment de novo. *Vail/Arrowhead, Inc. v. Dist. Court,* 954 P.2d 608, 611 (Colo.1998).

■ Interpretation of an insurance contract, including whether contract provisions are ambiguous, is a matter of law which we review de novo. *Compass Ins. Co. v. City of Littleton,* 984 P.2d 606, 613 (Colo.1999); *Prudential Prop. & Cas. Ins. Co. v. LaRose,* 919 P.2d 915, 916 (Colo.App.1996).

### II. Rules of Insurance Policy Interpretation

■ An insurer's duty to defend arises when the underlying complaint alleges facts that might fall within the coverage of the policy. *Cyprus Amax Minerals Co. v. Lexington Ins. Co.,* 74 P.3d 294, 300 (Colo.2003); *Compass Ins. Co. v. City of Littleton, supra,* 984 P.2d at 613. When determining whether an insurer has a duty to defend, a trial court must restrict its examination to the four corners of the underlying complaint. *McGowan v. State Farm Fire & Cas. Co.,* 100 P.3d 521, 523 (Colo.App.2004).

■ An insurer seeking to avoid a duty to defend "bears a heavy burden" of establishing that the allegations in the complaint are not covered by the policy because they are "solely and entirely within the exclusions in the insurance policy" and the exclusions "are not subject to any other reasonable interpretations." *Hecla Mining Co. v. New Hampshire Ins. Co.,* 811 P.2d 1083, 1089–90 (Colo. 1991).

An insurance policy is a contract and should be interpreted consistently with the well-settled principles of contractual interpretation. In contract interpretation, we begin by giving words used their plain and ordinary meaning unless the intent of the parties, as expressed in the contract, indicates that an alternative interpretation is intended. Courts should not rewrite clear and unambiguous contract provisions. *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo.1990); *see also Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo.2002). Dictionaries may be used to assist in the determination of the plain and ordinary meaning of words. *Hecla Mining Co. v. New Hampshire Ins. Co., supra*, 811 P.2d at 1091.

Ambiguous terms in an insurance policy are construed against the insurer. *Thompson v. Maryland Cas. Co.*, 84 P.3d 496, 501–02 (Colo.2004). A policy provision is ambiguous when it is reasonably susceptible of more than one meaning. *Ballow v. PHICO Ins. Co.*, 875 P.2d 1354, 1359 (Colo.1993). Courts will not force an ambiguity in an insurance contract in order to resolve it against the insurer. *Martinez v. Hawkeye–Security Ins. Co.*, 195 Colo. 184, 188, 576 P.2d 1017, 1019 (1978).

An insurance policy and an endorsement attached to it must be considered as a single instrument, and they should be construed together in the absence of an internal conflict that cannot be reconciled. The language in the endorsement, being the later expression of intent, prevails if the language of the two conflicts. *Martinez v. Hawkeye Security Ins. Co., supra*, 195 Colo. at 187, 576 P.2d at 1019.

### III. Ongoing or Completed Operations Coverage

As previously indicated, the controlling question presented here is whether the endorsement that extends coverage to the general contractor against its liability "arising out of [the subcontractor's] ongoing operations" also insures the general contractor against liability arising out of the subcontractor's "completed operations."

We and the parties have found only two cases discussing the additional insured endorsement at issue here. The first is *Pardee Construction Co. v. Insurance Co. of the West*, 77 Cal.App.4th 1340, 92 Cal.Rptr.2d 443 (2000); and the second is *Valley Insurance Co. v. Wellington Cheswick, LLC*, 2006 WL 3030282 (W.D.Wash. No. C051886RSM, Oct. 20, 2006) (unpublished order), *vacated*, 2007 WL 1531674 (W.D.Wash. No. C051886RSM, May 24, 2007) (unpublished order). The discussion in *Pardee* is dictum.

We acknowledge *Valley Insurance*, however, because the opinion was vacated we conclude that it has very limited value as precedent. Further, we find it unpersuasive because, while it relies on the definitions of "ongoing" and "operations," as do we, it does not, ultimately, treat them as a phrase or construe the phrase in the context of the policy there at issue.

In *Pardee*, a construction defect case, the general contractor's contract required the subcontractors to name it as an additional insured on their commercial general liability policies including completed work coverages. The subcontractors complied; however, as here, the relevant policies were issued following the completion of the project. Also, the additional insured endorsements were not limited, as here, to "ongoing operations" but instead specified "operations," as well as "all operations." The owner there sued for construction defects, and the general contractor submitted the litigation to several subcontractors' carriers for a defense and indemnification. The defect action named each subcontractor and alleged the defects attributable to each.

The court held that the endorsements included completed operations and required the insurers there to provide a defense. In bolstering its conclusion, the court, in dictum, stated that if the insurers wished to exclude completed operations, they need only have used additional insured endorsements similar to the endorsement. In that regard, the court stated:

> [I]n 1993, [ISO] revised the language of the form [20 10] endorsement utilized by the insurance industry to expressly restrict coverage for an additional insured

to the "ongoing operations" of the named insured. This revised language effectively precludes application of the endorsement's coverage to completed operations losses. [Wielinski, Woodward & Gibson, *Contractual Risk Transfer* § XI.C, at 26 (International Risk Management Institute (IRMI) 1998).] One insurance commentator stated regarding the 1993 revisions of the standard additional insured endorsement forms:

"The restriction of coverage in the two endorsements to only ongoing operations makes it clear that additional insureds will have no coverage under the named insured's policy for liability arising out of the products-completed operations exposure.... The effect of this change—restricting the coverage to ongoing operations—is, however, much more profound on [form 20 10]. Previous editions of [that form] contained no completed operations exclusion and, thus, could be called on to cover an additional insured for liability arising out of the products-completed operations hazard." [Malecki, *The Additional Insured Book* ch. 9, at 141–142 (3d ed. IRMI 1997).]

*Pardee Constr. Co. v. Ins. Co. of West, supra,* 92 Cal.Rptr.2d at 456 (footnotes omitted).

Here, the policy insures the subcontractor as the named insured and has a "General Aggregate Limit" of $2,000,000 and a "Products Completed Operations Aggregated Limit" of $2,000,000. With respect to "Contractors–Subcontracted Work–In Connection With Construction" the policy covers the subcontractor for "Premises/Operations" and "Product/Completed Operations," for each of which a premium is specified. The endorsements on the policy include "CG 20 10 1093," which insures the additional insureds, "but only with respect to liability arising out of [the subcontractor's] ongoing operations performed for that insured." It appears to be undisputed that the general contractor is an additional insured under this policy.

At the outset, "only" is a term of limitation. Neither "ongoing operations" nor "completed operations" is defined in the policy. However, "ongoing" is generally defined

as "that [which] is going on: a: that [which] is actually in process ... b: that [which] is continuously moving forward." *Webster's Third New International Dictionary* 1576 (2002) *(Webster's 2002); see also Webster's Third New International Dictionary* 1576 (1961) (*Webster's 1961*) (same); Webster's New International Dictionary 1504 (1927) (Webster's 1927) ("Act of going forward; proceeding; progress; ... doings; current events."); *American Heritage Dictionary* 1230 (4th ed.2000) (defining "ongoing" as "1. Currently taking place.... 2. In process or evolving.").

By contrast, "complete" is generally defined as "[b]rought to an end or to a final or intended condition; concluded; completed; as, the edifice is *complete." Webster's New International Dictionary* 456 (1927) (emphasis in original) (*Webster's 1927); see also Webster's Third New International Dictionary* 465 (1961) (*Webster's 1961*) (same).

"Operation" is generally defined as "a doing or performing esp. of action: WORK, DEED." *Webster's 2002, supra,* at 1581; *see also Webster's 1961, supra,* at 1581 (same); *Webster's 1927, supra,* at 1507 (same). The term "operations" as used in the policy is the plural of "operation."

In our view, the policy is unambiguous as to the extent of the coverage available to the additional insured. The term "completed operations" as used in the policy extends that coverage to the subcontractor or named insured, and the term "ongoing operations" used in conjunction with "only" in the endorsement limits the coverage provided to the general contractor or additional insured. The use of different terms in the policy signals that those terms should be afforded different meanings. *See Carlson v. Ferris,* 85 P.3d 504, 509 (Colo.2003); *cf. Freedom Newspapers, Inc. v. Tollefson,* 961 P.2d 1150, 1153 (Colo.App.1998) (absent a manifest indication to the contrary, the rule of consistent usage requires that the use of the same words or phrases in different parts of a statute should be given the same meaning). Therefore, we disagree with the general contractor's assertion that "ongoing operations" used in the endorsement to limit coverage

has the same meaning as "completed operations" used elsewhere in the policy.

Our construction of the endorsement and the policy is in accordance with the views expressed by the commentators. Prior to 1993, form CG 20 10, the additional insured endorsement read: "WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, *but only with respect to liability arising out of 'your work' for that insured by or for you.*" (Capitalization in original, emphasis added.) In 1993, the version at issue here was adopted, and the term "arising out of 'your work' " was replaced by "arising out of your ongoing operations."

One commentator addressing this history states:

> At the outset, it is important to understand that there is no one standard additional insured endorsement form. There are many different such forms. The ISO publishes two standard forms for owners, lessees or contractors. Form 20 10 ... is the most common additional insured endorsement.... Coverage is not necessarily the same under different editions of the same form. For example, by its terms, the 1993 edition of Form 20 09 excludes coverage to additional insureds for "bodily injury or property damage after all work to be performed by or on behalf of the additional insured has been completed." [n.11] In other words, the 1993 and 1996 editions of this form extend coverage only to "ongoing operations." Without express language limiting coverage to "ongoing operations," additional insured endorsements have been interpreted to apply to completed operations losses [citing *Pardee, supra*].

4 *Construction Law, supra,* § 11:56, at 19597 (additional footnotes omitted). At footnote 11, the commentator notes:

> Although accomplished somewhat differently, the 1993 and 1997 editions of CG 20 10 attempt the same result. As the language reads in relevant part: "[the endorsement]."

The question that arises in connection with the CG 20 10 language is whether coverage extends to instances where the injury occurs after the named insured has completed its work, but the liability can be traced to an occurrence during ongoing operations. It would appear that coverage exists in such a situation as long as the injury also occurs during the policy period. In this regard, CG 20 10 provides broader coverage (perhaps unintended) than CG 20 09.

4 *Construction Law, supra,* § 11:56, at 19697 n. 11.

Another commentator addressing this change has stated:

> The difference between "your work" and "your ongoing operations" is that "your work," within the parameters of the [commercial general liability] definition, can be either work in progress or work that has been completed; "ongoing operations" is not a defined [commercial general liability] term, but suggests work only for as long as it is actually being performed. In short, coverage for the additional insured with respect to the named insured's completed operations was clearly present in the original edition of CG 20 10. The insurance industry sought to remove that component of coverage by insuring only liability arising out of the named insured's ongoing operations—or work in progress—beginning with the 1993 version of the endorsement.

D. Malecki, P. Ligeros & J. Gibson, *The Additional Insured Book* 184 (5th ed.2004).

Finally, another commentator states:

> Until 1993, the standard additional insured endorsements used in conjunction with construction operations (primarily CG 20 10) extended coverage to additional insureds for both ongoing and completed operations. The post–1993 editions of this endorsement narrow the scope of an additional insured's coverage by limiting its application to liability arising out of the insured contractor's "ongoing operations," the [implication] of which is that additional insureds are not covered with respect to liability in connection with completed projects.

R. Carris et al., *Construction Risk Management* ch. VI (IRMI 2004). *(The Additional Insured Book* and *Construction Risk Management* are publications of IRMI, an independent entity providing advice and practical strategies for risk management, insurance, and legal professionals through seminars and publications. These publications are not generally available in comprehensive public or academic law libraries. They are available on the Internet at http://www.irmionline.com, without page numbers, subject to the payment of a fee or by special arrangement.)

Thus, we conclude that under the plain and ordinary meaning of "arising out of your ongoing operations" the endorsement to the policy does not cover "completed operations," and the insurer has no duty to defend or indemnify the general contractor under the circumstances here. *See Hecla Mining Co. v. New Hampshire Ins. Co., supra.*

### IV. Bad Faith Claim

The general contractor asserts that the trial court erred by granting summary judgment on its claim of bad faith breach of an insurance contract. We disagree.

The claim of bad faith breach of an insurance contract was based on the insurer's refusal to defend. Because we have concluded that the policy did not cover the claims made in the construction defect action, summary judgment was properly entered in favor of the insurer. *See Am. Family Mut. Ins. Co. v. Allen,* 102 P.3d 333, 342 (Colo. 2004); *Tynan's Nissan, Inc. v. Am. Hardware Mut. Ins. Co.,* 917 P.2d 321, 326 (Colo. App.1995).

### V. Deceptive Trade Practices Claim

The general contractor asserts that the trial court erred by granting summary judgment on its claim of deceptive trade practices in violation of the Colorado Consumer Protection Act (CCPA). We again disagree.

To prove a private claim for relief under the CCPA, a plaintiff must show (1)

that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of the defendant's business, vocation, or occupation; (3) that the challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury. *Crowe v. Tull,* 126 P.3d 196, 201 (Colo.2006).

We agree with the trial court that the general contractor's claim failed to meet the first prong. The subcontractor requested the endorsement at issue and, as previously described, the plain language of the endorsement did not obligate the insurer to provide a defense. Given these circumstances, we conclude that the insurer did not engage in an unfair or deceptive trade practice.

The judgment is affirmed.

Judge BERNARD and Judge KAPELKE concur.*