**Christopher ROINESTAD and Gerald Fitz–Gerald, Plaintiffs–Appellants,**

v.

**Tim KIRKPATRICK, d/b/a Hog's Breath Saloon & Restaurant, Defendant,**

and

**Mountain States Mutual Casualty Company, Defendant and Garnishee–Appellee.**

No. 09CA2179.

Colorado Court of Appeals, Div. II.

Oct. 14, 2010.

As Modified on Denial of Rehearing Nov. 18, 2010.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2009.

Killian & Davis, P.C., J. Keith Killian, Damon Davis, Nicholas W. Mayle, Grand Junction, Colorado, for Plaintiffs–Appellants.

Lasater & Martin, P.C., Janet Belcher Martin, Melissa A. Ogburn, Highlands Ranch, Colorado, for Defendant and Garnishee–Appellee.

Opinion by Judge GABRIEL.

In this case, we must determine whether a pollution exclusion clause in an insurance policy issued by defendant Mountain States Mutual Casualty Company (insurer) to Tim Kirkpatrick, doing business as Hog's Breath Saloon and Restaurant (Hog's Breath), bars coverage for injuries suffered by plaintiffs, Christopher Roinestad and Gerald Fitz–Gerald, as a result of the negligent dumping of cooking oil and grease by Hog's Breath. After the insurer moved for summary judgment and plaintiffs responded, arguing that the insurer's motion should be denied but that summary judgment should enter in their favor, the district court granted summary judgment to the insurer, holding that the pollution exclusion clause precluded coverage.

We conclude that the pollution exclusion clause is ambiguous when applied to the cooking oil and grease at issue here. Accordingly, construing the ambiguous exclusion against the insurer and in favor of coverage, as we must, we reverse the judgment and remand with instructions that the district court enter judgment in favor of plaintiffs.

## I. Background

As part of their routine cleaning of the kitchen at Hog's Breath, Hog's Breath employees poured greasy water into the sewer drain outside the bar. Over time, the grease built up in the city's sewer system.

In early October 2003, as part of a citywide rehabilitation of the sewer lines, plaintiffs were working to clean out the sewer line near Hog's Breath, but not on its property. As pertinent here, Fitz–Gerald was standing over a manhole located downstream of Hog's Breath, using a jet hose to clear a clog of grease in the sewer line. Plaintiffs smelled hydrogen sulfide when they opened the manhole, and when the clog broke free, they noticed that the odor had increased dramatically. Before he could move away, Fitz–Gerald lost consciousness and fell into the manhole.

Roinestad radioed for help from other employees and then entered the manhole to try to help Fitz–Gerald. He too, however, was overcome by the hydrogen sulfide fumes and passed out. .

Other workers managed to rescue the men, who were taken to the hospital, where they received hyperbaric oxygen therapy. Both men survived but have suffered ongoing health effects from this incident. In addition, evidence showed that as a result of their injuries, both men have had trouble maintaining employment.

Plaintiffs sued Hog's Breath, alleging negligence, negligence per se, and off premises liability. The district court granted plaintiffs' motion for summary judgment on liability, finding Hog's Breath liable for negligence and off premises liability. The court found it unnecessary to decide any of plaintiffs' remaining claims and dismissed those claims as

moot. The court subsequently entered judgment for Roinestad in the amount of $2,152,330 and for Fitz–Gerald in the amount of $1,791,087, with statutory interest to be added to both amounts.

The focus of the underlying litigation then turned to the question of insurance coverage. Hog's Breath's commercial general insurance policy included a business owners liability form. The parties do not appear to dispute that, absent an applicable exclusion, plaintiffs' claims here would be covered by this policy.

The policy also contained an industry standard "absolute" pollution exclusion. That clause provided, in relevant part:

This insurance does not apply to:

. . . .

f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

. . . .

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

The insurer first brought an action in federal court against Hog's Breath to determine the extent of its obligation to defend and indemnify Hog's Breath in this case (plaintiffs were not parties to the federal suit). There, the insurer argued that Hog's Breath had discharged or dispersed a pollutant when its employees poured grease down the sewer drain. Thus, the insurer claimed, plaintiffs' injuries fell within the pollution exclusion clause. The federal court agreed and granted summary judgment for the insurer.

*Mountain States Mut. Cas. Co. v. Kirkpatrick*, No. 06–cv–00221–WDM–OES, 2007 WL 2506640, at *4 (D.Colo. Aug. 30, 2007) (unpublished order). Because plaintiffs were not parties to that action, no party claims that that determination is binding on plaintiffs here.

Thereafter, plaintiffs sought to garnish Hog's Breath's insurance policy. The insurer then entered its appearance in this case and again argued that the pollution exclusion clause barred coverage. After the insurer moved for summary judgment and plaintiffs responded, arguing that the court should deny the insurer's motion but enter judgment as a matter of law for them, the district court agreed with the insurer and granted summary judgment in its favor.

Plaintiffs now appeal.

## II. Standard of Review

We review a district court's grant of summary judgment de novo. *Weitz Co. v. Mid-Century Ins. Co.*, 181 P.3d 309, 311 (Colo. App.2007). Summary judgment is a drastic remedy and should only be granted when there is a clear showing that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo.1999). The nonmoving party is entitled to all favorable inferences that can be drawn from the undisputed facts, and we resolve all doubts as to whether a triable issue of fact exists against the moving party. *Id.*

"Interpretation of an insurance contract, including whether contract provisions are ambiguous, is a matter of law which we review de novo." *Weitz Co.*, 181 P.3d at 311. We construe the terms of an insurance policy pursuant to the principles of contract interpretation. *Cotter Corp. v. American Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 819 (Colo.2004). "As when interpreting contracts, we attempt to carry out the parties' intent and reasonable expectations when they drafted the policies." *Id.*

When the terms of an insurance policy are not defined, we give those words

their plain, ordinary meanings and interpret them "according to the understanding of the average purchaser of insurance." *Compass Ins. Co.*, 984 P.2d at 617. "We must enforce the plain language of the policy unless it is ambiguous. An insurance policy is ambiguous if it is susceptible to more than one reasonable interpretation." *Hoang v. Assurance Co.*, 149 P.3d 798, 801 (Colo.2007) (citation omitted). We determine ambiguity based on the facts and circumstances of the particular case before us. *TerraMatrix, Inc. v. U.S. Fire Ins. Co.*, 939 P.2d 483, 487 (Colo.App.1997).

> In undertaking the interpretation of an insurance contract, courts should be wary of rewriting provisions, and should give the words contained in the contract their plain and ordinary meaning, unless contrary intent is evidenced in the policy. Courts should read the provisions of the policy as a whole, rather than reading them in isolation. Courts may neither add provisions to extend coverage beyond that contracted for, nor delete them to limit coverage. However, because of the unique nature of insurance contracts and the relationship between the insurer and insured, courts do construe ambiguous provisions against the insurer and in favor of providing coverage to the insured.

*Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo.2003) (citations omitted).

For the same reasons, coverage exclusions are construed against the insurer. *Worsham Constr. Co. v. Reliance Ins. Co.*, 687 P.2d 988, 990 (Colo.App.1984). Such clauses must be drafted in clear and specific language. *Am. Family Mut. Ins. Co. v. Johnson*, 816 P.2d 952, 953 (Colo.1991). "To benefit from an exclusionary provision in a particular contract of insurance the insurer must establish that the exemption claimed applies in the particular case and that the exclusions are not subject to any other reasonable interpretations." *Id.*

### III. The Pollution Exclusion Clause Is Inapplicable Here

Applying the foregoing principles here, we note that to avoid coverage under the insurance policy at issue, the insurer must demonstrate that plaintiffs' injuries arose out of the discharge of a pollutant. Therefore, the insurer must demonstrate both that the alleged source of the injury was a pollutant *and* that the pollutant was discharged at or from Hog's Breath or at or from another site used by Hog's Breath for the handling, storage, disposal, processing, or treatment of waste.

Plaintiffs assert that the insurer failed to establish that either the hydrogen sulfide gas, on the one hand, or the cooking oil and grease, on the other hand, constitute "pollutants" discharged by Hog's Breath, and that therefore, the exclusion does not apply. Plaintiffs thus contend that the district court should have entered judgment in their favor and enforced the writ of garnishment. We agree that there was no applicable discharge of hydrogen sulfide and that cooking oil and grease were not unambiguously contaminants here.

### A. Hydrogen Sulfide

Plaintiffs first contend, in pertinent part, that their injuries did not arise from the discharge of hydrogen sulfide, a pollutant, at or from Hog's Breath. Thus, they claim, the pollution exclusion does not apply. We agree in part. Specifically, assuming without deciding that plaintiffs' injuries arose from the discharge of the hydrogen sulfide and that this gas was a pollutant within the meaning of the policy, we conclude that the insurer has failed to demonstrate that the hydrogen sulfide was discharged at or from Hog's Breath.

> Because the words "discharge," "dispersal," "seepage," "migration," "release," or "escape" are not defined in the Policy, they must be given their usual, common, and ordinary meaning. To "discharge" is to, *inter alia*, "pour forth; emit," or "to release, send away, or allow to go (often [followed] by from)," or to "allow (a liquid, gas, or other substance) to flow out from where it has been confined." "Dispersal" is "to cause (particles) to separate uniformly throughout a sol[i]d, liquid, or gas," or "the action or process of distributing things ... over a wide area." "Seepage"

is "the process of seeping," that is "the slow escape of a liquid or gas through porous material or small holes." "Migration" is to "move from one specific part of something to another." To "release" is "to free from confinement, bondage, obligation, pain, etc.; to let go." And "escape" has been defined as, among other things, "leakage, as of water or gas."

*Firemen's Ins. Co. v. Kline & Son Cement Repair, Inc.*, 474 F.Supp.2d 779, 798 (E.D.Va.2007) (quoting *The New Oxford American Dictionary* 482, 488, 574, 1074, 1534 (2d ed. Oxford Univ. Press 2005), and *Webster's New Universal Unabridged Dictionary* 561, 568, 660, 1627 (2003); other citations omitted).

Implicit in each of these definitions is the idea that the pollutant must travel from one place to another. *Id.* Moreover, as noted above, under the policy language at issue here, the pollutant must be discharged or released:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured; [or]

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste.

Here, the insurer has offered no evidence that the hydrogen sulfide was discharged at or from Hog's Breath or at or from any other premises, site, or location that was owned or occupied by, or rented or loaned to, Hog's Breath. Nor has the insurer produced any evidence that the gas was discharged at or from any other premises, site, or location that was used by Hog's Breath for the handling, storage, disposal, processing, or treatment of waste.

Conversely, plaintiffs showed that hydrogen sulfide occurs naturally in stagnant water, swamps, some mineral waters, volcanic gases, sulfur springs, crude petroleum, and natural gas. They also demonstrated that hydrogen sulfide can result from bacterial breakdown of organic matter and that hydrogen sulfide gas produced by disturbance of stagnant sewage trapped in septic conditions is known to reach very high levels in wastewater treatment systems. Finally, plaintiffs' evidence showed that hydrogen sulfide is the most commonly known and prevalent odorous gas associated with domestic wastewater collection and treatment systems.

For these reasons, we conclude that the insurer has failed to sustain its burden of demonstrating that the pollution exclusion applies due to the discharge of hydrogen sulfide. *See Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1090 (Colo.1991) ("In order to avoid policy coverage, an insurer must establish that the exemption claimed applies in the particular case, and that the exclusions are not subject to any other reasonable interpretations.").

### B. Cooking Oil and Grease

■ Plaintiffs' contention that the insurer has failed to show that their injuries arose from the discharge of cooking oil and grease, which the insurer claims to be a pollutant, presents a closer and more difficult question. Among other things, plaintiffs argue that the definition of "pollutant" does not unambiguously apply to cooking oil and grease, thus rendering the pollution exclusion clause inapplicable. Again, we agree.

Courts that have construed pollution exclusion clauses like that at issue here are split as to whether the clause is ambiguous. *TerraMatrix*, 939 P.2d at 487. Some courts have held that the clause is unambiguous under all circumstances. *See id.* (citing *U.S. Liability Ins. Co. v. Bourbeau*, 49 F.3d 786 (1st Cir.1995)). Other courts, including a prior division of this court, have held that the appropriate inquiry is whether the exclusion is ambiguous when applied to the facts and circumstances presented in a particular case. *See id.* We agree with the latter approach and thus must determine whether the pollution exclusion clause is ambiguous when applied to the cooking oil and grease at issue here.

As noted above, "pollutant" is defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, re-

conditioned or reclaimed." The insurer does not contend that the cooking oil and grease were irritants. Thus, we must determine whether they were contaminants.

"Contaminant" is not defined in Hog's Breath's policy, and courts have not adopted a uniform definition of this term. Thus, in *Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Insurance Co.*, 472 F.3d 33, 43–46 (2d Cir.2006) (citations omitted), the court noted that "contaminant" or "contamination" has been defined to include (1) the introduction of a foreign substance that injures the usefulness of the object; (2) a condition of impurity resulting from the mixture or contact with a foreign substance; (3) an environmental term of art that applies only to discharges of pollutants into the environment; and (4) the mixing of substances like dirt and water that results in an impure mixture.

One could reasonably argue that the release of cooking oil and grease by Hog's Breath amounted to the introduction of a foreign substance into the sewer line that injured the usefulness of that line. Indeed, the federal court in the insurer's prior action so held. *See Mountain States Mut. Cas. Co.*, 2007 WL 2506640, at *4. It is equally reasonable, however, to define "contaminant" to mean a substance that combines with another to create an impure mixture, and to conclude that the cooking oil and grease at issue did not satisfy that definition.

For these reasons, the pollution exclusion at issue does not clearly and specifically alert an insured that coverage is excluded when an injury results from a sewer that is clogged by negligently dumped cooking oil and grease. *See Am. Family Mut. Ins.*, 816 P.2d at 953 (requiring that exclusion clauses be drafted in "clear and specific language"); *Donaldson v. Urban Land Interests, Inc.*, 211 Wis.2d 224, 564 N.W.2d 728, 732 (1997) (exclusion clause inapplicable where it did not "plainly and clearly" alert a reasonable insured that coverage would be denied in the circumstances at issue). Thus, the policy language at issue here, insofar as it relates to cooking oil and grease, is susceptible to more than one reasonable interpretation and, therefore, is ambiguous as applied in this context.

Our conclusion finds further support in those cases from other jurisdictions in which courts have observed that, read literally, and as broadly as insurers like the insurer here have argued, the pollution exclusion would lead to absurd results. For example, in *Pipefitters Welfare Educational Fund v. Westchester Fire Insurance Co.*, 976 F.2d 1037, 1043–44 (7th Cir.1992), the court noted that a limiting principle was required to prevent the clause from extending far beyond its intended scope:

> To take but two simple examples, reading the clause broadly would bar coverage for bodily injuries suffered by one who slips and falls on the spilled contents of a bottle of Drano, and for bodily injury caused by an allergic reaction to chlorine in a public pool. Although Drano and chlorine are both irritants or contaminants that cause, under certain conditions, bodily injury or property damage, one would not ordinarily characterize these events as pollution.

*Id.* at 1043.

Similarly, in *Enron Oil Trading & Transportation Co. v. Walbrook Insurance Co.*, 132 F.3d 526, 530 (9th Cir.1997), the court opined that under the insurers' broad interpretation, "the exclusion would be virtually limitless, extending to claims for product liability (for example, a bottle manufactured with impure glass) or for negligence (for example, spoilt food served in a restaurant) that arguably involved an impurity resulting from contact with a foreign substance."

Finally, in *American States Insurance Co. v. Kiger*, 662 N.E.2d 945, 948 (Ind.1996), the court interpreted a pollution exclusion clause that is identical to that at issue here and held, "Clearly this clause cannot be read literally as it would negate virtually all coverage. For example, if a visitor slips on a grease spill then, since grease is a 'chemical,' there would be no insurance coverage. Accordingly, this clause requires interpretation."

We acknowledge that courts from certain other jurisdictions have determined that cooking oil and grease fall within the defini-

tion of "pollutants" because they constitute "waste." *See, e.g., Matheny v. Ludwig,* 742 So.2d 1029, 1034 (La.Ct.App.1999); *Boulevard Inv. Co. v. Capitol Indem. Corp.,* 27 S.W.3d 856, 858 (Mo.Ct.App.2000). In these cases, however, the courts read "waste" in isolation from the remainder of the definition of "pollutant." For the reasons noted above, we do not agree that this construction is proper. Just as "contaminant," read in isolation, would be virtually limitless in scope and could lead to absurd results, so, too, would an overly broad reading of "waste." For example, if all waste were, by definition, a pollutant, then a landfill could not insure itself against the risk that a customer might be injured by slipping on trash while unloading garbage.

Even if one could reasonably read the exclusion clause to mean that all waste is a pollutant, however, we note that the exclusion clause could also reasonably be read to mean that waste is a pollutant only if it is irritating or contaminating. Accordingly, "waste" is susceptible to multiple reasonable interpretations, and for the reasons set forth above, this renders it ambiguous as applied here. *See Hoang,* 149 P.3d at 801 (an insurance policy is ambiguous if it is susceptible to more than one reasonable interpretation).

■ Finally, we reject the insurer's argument that plaintiffs' complaint effectively admits that cooking oil and grease are pollutants within the meaning of the exclusion. Although a court should look to the operative complaint when resolving an indemnity dispute, ultimately, "the court must look to the facts as they developed at trial and the ultimate judgment" to determine whether an insurer has a duty to indemnify the insured. *Cyprus Amax Minerals Co.,* 74 P.3d at 301. Here, the district court concluded that Hog's Breath had a duty not to dispose of cooking oil and grease in the sewer system improperly, and that Hog's Breath had breached that duty. Accordingly, the ultimate determination in this case did not depend on whether the cooking oil and grease were pollutants, and any contention in plaintiffs' underlying complaint is not dispositive of the insurer's duty to indemnify.

For these reasons, we do not agree with the insurer that the pollution exclusion clause is unambiguous when applied to the cooking oil and grease at issue. Thus, the clause must be construed against the insurer and in favor of coverage. *Hecla Mining Co.,* 811 P.2d at 1090–91.

Accordingly, we conclude that the district court erred in granting summary judgment for the insurer and that judgment should properly have entered for plaintiffs, as plaintiffs assert. In light of our disposition, we need not address the other issues raised by the parties, including the issue of whether the pollution exclusion clause at issue should be limited to environmental pollution.

## IV.  Conclusion

For these reasons, the judgment of the district court is reversed, and the case is remanded with directions to enter judgment for plaintiffs and to enforce the writ of garnishment.

Judge HAWTHORNE and Judge STERNBERG * concur.

---

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2010.