2012 COA 53

Shadi FIGULI, Joshua Figuli, and Jean Chu, Plaintiffs–Appellants,

v.

STATE FARM MUTUAL FIRE & CASU-ALTY, d/b/a State Farm Insurance Companies, Defendant–Appellee.

No. 11CA0613.

Colorado Court of Appeals, Div. V.

March 29, 2012.

Silvern & Bulger, P.C., Thomas A. Bulger, Wheat Ridge, Colorado, for Plaintiffs–Appellants.

Sweetbaum Sands Anderson PC, Jon F. Sands, Kimberle E. O'Brien, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge GRAHAM.

¶ 1 In this action concerning insurance coverage, plaintiffs, Shadi Figuli, Joshua Figuli, and Jean Chu, appeal the district court's summary judgment in favor of defendant, State Farm Insurance Companies, concluding that raw sewage is a pollutant excluded from coverage by State Farm policies' absolute pollution exclusion. We affirm.

## I. Background

¶ 2 In 2004, the Figulis became ill while living in a rental property owned by Chu. The property was covered by a rental dwelling policy with State Farm, and Chu also had a personal liability umbrella policy.

¶ 3 After testing on the property revealed the presence of toxic mold and raw sewage, the Figulis filed suit against Chu for their injuries. Specifically, the Figulis alleged Chu "did not disclose to [them] (at any time) that the property had, in the past, been contaminated by raw sewage and/or other hazardous materials, and had not been properly remediated before it was re-rented." They further claimed that Chu "failed to disclose and/or concealed other serious problems with the property, including several water leaks" which resulted in toxic mold.

¶ 4 Chu advised State Farm of the Figulis' claims and requested State Farm defend and indemnify her. State Farm denied Chu's claim, citing three separate coverage exclu-

sions in the policies. First, both the rental and umbrella policies included an endorsement excluding coverage for fungus, including mold.[1] Second, the umbrella policy excluded coverage "for any loss caused by [the insured's] business pursuits or arising out of business property." Third, the exclusion at issue here, the absolute pollution exclusion (APE) included in the rental policy, states in pertinent part:

1. Coverage L—Business Liability and Coverage M—Premises Medical Payments do not apply to:

i. bodily injury or property damages arising out of the actual, alleged or threatened discharge, dispersal, spill, release or escape of pollutants:

(1) at or from premises owned, rented or occupied by the named insured;

. . . .

As used in this exclusion:

"pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.

"waste" includes materials to be recycled, reconditioned or reclaimed.

¶ 5 Based upon this exclusion, State Farm concluded the Figulis' claimed injuries from "raw sewage and/or other hazardous materials" were injuries arising from the "discharge, dispersal, spill, release or escape of pollutants" and, therefore, were not covered by the policies.

¶ 6 Chu and the Figulis agreed to arbitrate their dispute. At the completion of arbitration, the Figulis were awarded $130,000 plus costs and interest, for a total of $178,500, confirmed by order of the district court.

¶ 7 Plaintiffs then filed the current action against State Farm alleging breach of contract based upon the denial of coverage. The parties submitted a joint stipulation of facts and cross-motions for summary judgment. The district court granted summary judgment in favor of State Farm, concluding:

[T]he Court here finds that there can be no serious question that "other hazardous materials," "dangerous toxins," "chemicals" and "other contamin[ants]" are unambiguously pollutants. Thus, the remaining issue is whether "raw sewage" is unambiguously a pollutant.

A brief search by the Court finds that sewage is defined as a pollutant by both the Clean Water Act and Colorado Water [Quality] Control Act. See 33 U.S.C. § 1362(6) and C.R.S. § 25–8–103(15). Further, in reviewing multiple dictionaries, the Court notes the definitions almost universally contain the term "waste matter." See Dictionary. com Unabridged; Collins English Dictionary–Complete & Unabridged 10th Ed.; Merriam–Webster's Medical Dictionary.

Accordingly, the Court finds that raw sewage is unambiguously a pollutant as used in the Absolute Pollution Exclusion.

Plaintiffs appeal.

## II. Standard of Review

¶ 8 We review a trial court's grant of summary judgment de novo. *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 819 (Colo.2004). Summary judgment is appropriate only if the pleadings, affidavits, depositions, or admissions in the record establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Nelson v. Gas Research Inst.*, 121 P.3d 340, 343 (Colo.App.2005).

¶ 9 Summary judgment is a drastic remedy and should only be granted upon a clear showing that there is no genuine issue of material fact. C.R.C.P. 56(c); *Christoph v. Colo. Commc'ns Corp.*, 946 P.2d 519, 521 (Colo.App.1997). "In assessing the sufficiency of the evidence for purposes of determining a motion for summary judgment, all inferences from factual averments must be made in favor of the non-moving party."

---

1. In their motion for summary judgment, plaintiffs "concede[d] that mold damages would (likely) be excluded by the subject policies." Thus, plaintiffs do not argue the Figulis' injuries related solely to toxic mold are covered under the policies and rather focus on whether State Farm should have defended and indemnified Chu for those injuries related to the "raw sewage and/or other hazardous materials" which caused injury.

*TerraMatrix, Inc. v. U.S. Fire Ins. Co.*, 939 P.2d 483, 486 (Colo.App.1997).

¶ 10 An insurance policy is a contract, the interpretation of which is a legal matter that we review de novo. *Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo. 2005); *Hyden v. Farmers Ins. Exch.*, 20 P.3d 1222, 1224 (Colo.App.2000). Because contract interpretation presents a legal question, summary judgment may be appropriate to resolve such a question. *Tynan's Nissan, Inc. v. Am. Hardware Mut. Ins. Co.*, 917 P.2d 321, 323 (Colo.App.1995).

### III. The Absolute Pollution Exclusion

¶ 11 Plaintiffs raise a single issue of contract interpretation on appeal. Stated in their own words, plaintiffs ask whether

> water and sewage, which overflowed from a residential toilet or sewer, and the bacteria and parasites that it carried, [are] "pollutants" for the purposes of Ms. Chu's insurance coverage, and the standard pollution exclusion, contained in her policies.

We conclude the APE is unambiguous when applied to raw sewage and therefore State Farm properly denied Chu's claim.

¶ 12 An insurance policy is a contract and should be interpreted consistently with the well-settled principles of contract interpretation. *Weitz Co. v. Mid–Century Ins. Co.*, 181 P.3d 309, 312 (Colo.App.2007); *see DeHerrera v. Am. Family Mut. Ins. Co.*, 219 P.3d 346, 349 (Colo.App.2009). "In contract interpretation, we begin by giving words used their plain and ordinary meaning unless the intent of the parties, as expressed in the contract, indicates that an alternative interpretation is intended." *Weitz*, 181 P.3d at 312; *see USAA Cas. Ins. Co. v. Anglum*, 119 P.3d 1058, 1060 (Colo.2005) ("In determining whether there is an ambiguity in a policy provision, we evaluate the policy as a whole, using the generally accepted meaning of the words employed."). "Dictionaries may be used to assist in the determination of the plain and ordinary meaning of words." *Weitz*, 181 P.3d at 312 (citing *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1091 (Colo.1991)).

¶ 13 In Colorado, "the plain language of the [APE] is not limited solely to environmental or industrial contexts." *TerraMatrix, Inc.*, 939 P.2d at 488.[2] Therefore, to determine whether the APE clause is ambiguous, we must look "to the facts and circumstances of a particular case." *Id.* at 487. Consequently, "the fact that 'terms of a policy of insurance may be construed as ambiguous where applied to one set of facts does not make them ambiguous as to other facts which come directly within the purview of such terms.'" *Allstate Ins. Co. v. Juniel*, 931 P.2d 511, 514 (Colo.App.1996) (quoting L. Russ, *Couch on Insurance* § 21.14, at 21–26 (3d ed. 1995)).

¶ 14 Here, we conclude that the APE is unambiguous when applied to raw sewage. The policy defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including ... waste." "Waste" is defined in the policy as including, but not limited to, materials to be recycled, reconditioned, or reclaimed. *Webster's Third New International Dictionary* defines "sewage" as "the contents of a sewer or household drain: refuse liquids or *waste matter* carried off by sewers." *Webster's Third New International Dictionary Unabridged* 2081 (2002) (emphasis added); *see also Sloane–Dorland Annotated Medical–Legal Dictionary* 640 (1987) ("Raw sewage, by definition, is the water supply of a community after it has been fouled by various uses. From the standpoint of source, it is a combination of the liquid or water-carried wastes from residences and business and industry, together with ground

---

2. Plaintiffs contend the APE should be limited to circumstances of "traditional" or "industrial" pollution and cite cases from other jurisdictions so concluding. *See, e.g., Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir.1999); *Am. States Ins. Co. v. Koloms*, 177 Ill.2d 473, 227 Ill.Dec. 149, 687 N.E.2d 72, 79 (1997). However, this issue was already addressed in *TerraMatrix*, in which a division of this court concluded

the APE was not limited solely to industrial pollution. 939 P.2d at 488. We agree with that division's analysis and also conclude the APE is not limited to traditional or industrial pollution. *See, e.g., Am. States Ins. Co. v. Nethery*, 79 F.3d 473, 477–78 (5th Cir.1996); *Philadelphia Indem. Ins. Co. v. Yachtman's Inn Condo Ass'n*, 595 F.Supp.2d 1319, 1324 (S.D.Fla.2009).

water, surface water and storm water. It is also composed of suspended solids and dissolved solids, including human fecal matter.") (citing *United States v. City of Asbury Park*, 340 F.Supp. 555, 560 (D.N.J.1972)). Thus, the plain meaning of the term "sewage" is waste, and waste is clearly included in the definition of "pollutants" under the policy.

¶ 15 Furthermore, as the district court found, raw sewage is considered a pollutant under both the Clean Water Act and the Colorado Water Quality Control Act. 33 U.S.C. § 1362(6) ("The term 'pollutant' means ... solid waste, ... sewage, ... [and] sewage sludge ... discharged into water."); § 25–8–103(15), C.R.S.2011 (" 'Pollutant' means ... sewage ...."); *see TerraMatrix, Inc.*, 939 P.2d at 488 (concluding ammonia was a pollutant based in part upon its regulation as a hazardous substance under several federal programs). Additionally, the definition of "waste" includes both "excrement" and "sewage." *Webster's Third New International Dictionary* 2580 (2002); *see Taber's Cyclopedic Medical Dictionary* 2013 (16th ed. 1989) (defining "waste" as "[r]efuse material no longer useful to an organism" and "waste products" as "[c]arbon dioxide, organic and inorganic salts, urine, dead skin, hair, nails, [and] undigested foods").

¶ 16 Plaintiffs cite *Roinestad v. Kirkpatrick*, 300 P.3d 571, —— (Colo.App.2010) *(cert. granted* May 9, 2011), for the proposition that the APE must be ambiguous. We disagree.

¶ 17 In *Roinestad*, a division of this court concluded that cooking oil and grease dumped into a sewer, which led to the buildup of hydrogen sulfide gas, did not fall within the meaning of "pollutant" and, therefore, the APE was ambiguous. 300 P.3d at ——. However, as stated above, "the fact that 'terms of a policy of insurance may be construed as ambiguous where applied to one set of facts does not make them ambiguous as to other facts which come directly within the purview of such terms.' " *Juniel*, 931 P.2d at 514 (quoting *Couch on Insurance* § 21.14, at 21–26). While the division in *Roinestad* concluded the APE was ambiguous under those circumstances, nothing in that opinion compels us to conclude that the APE must be ambiguous as to all potential pollutants or specifically as to raw sewage. Rather, as we conclude above, raw sewage falls directly within the plain meaning of "pollutants" in the APE, which therefore is unambiguous in this case.

¶ 18 Under these circumstances, we conclude that the APE is unambiguous when applied to raw sewage, that raw sewage constitutes a pollutant under the APE, and that movement of the raw sewage which "overflowed from a residential toilet or sewer" constituted a "discharge, dispersal, spill, release or escape of pollutants" within the meaning of the APE.

¶ 19 Based upon this conclusion, we further conclude the district court correctly held State Farm had no duty to defend or indemnify Chu and properly granted summary judgment in State Farm's favor.

¶ 20 The judgment is affirmed.

Judge BOORAS concurs.

Judge CARPARELLI specially concurs.

CARPARELLI, J., specially concurring.

¶ 21 Although I concur in affirming the judgment, I write separately to emphasize that the policy's definition of "pollutant" excludes coverage related to "waste" only when the waste is an irritant or contaminant. In addition, I do not concur with the majority's reference to the statutory definition of pollution in the Clean Water Act, 33 U.S.C. 1362(6), and the Colorado Water Quality Control Act, section 25–8–105(15), C.R.S. 2011. The policy's definition does not refer to or incorporate the definition established by the United States Congress for purposes of the Clean Water Act, and future reliance on that definition would erroneously expand the policy definition.

¶ 22 The plaintiffs contend that the term "pollutant" does not include the bacteria and parasites carried by a residential sewage back-up. They also argue that there was no discharge of a "pollutant."

¶ 23 Reading the pollution exclusion as a whole and giving harmonious effect to its terms, I conclude that the controlling question is not whether the sewage here was

waste or industrial waste, but whether it was an irritant or contaminant. As applied here, I conclude that the trial court did not err when it granted summary judgment to State Farm.

¶ 24 The policy's pollution exclusion states that business liability and coverage for medical payments do not apply to, among other things, "bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, spill, release or escape of pollutants" at or from specified locations subject to certain conditions.

¶ 25 According to the policy, " 'pollutants' means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." Reading this provision and construing it as would a reasonable person of ordinary intelligence, to be a pollutant, a substance must be a solid, liquid, or gas. These are physical states. There was no genuine issue of fact that the sewage was a mixture of solids and liquids.

¶ 26 However, a pollutant must be an irritant or contaminant. These are the essential characteristics of a pollutant under the policy. In this regard, I agree with the analysis of the division in *Roinestad v. Kirkpatrick,* 300 P.3d 571, —— (Colo.App.2010) (*cert. granted* May 9, 2011).

¶ 27 Thereafter, the definition of "pollutant" provides a nonexclusive list of physical (perhaps hybrid) forms that are included in the three essential physical states: smoke, vapor, soot, and fumes. Because this is a non-exclusive list of physical forms, it does not reduce the scope of substances that might be irritants or contaminants. Nor does it supplant the essential requirement that a substance in any of these forms is a pollutant only if it is an irritant or contaminant. The list also provides other examples: acids, alkalis, chemicals and waste. Again, these are non-exclusive examples that neither reduce the scope of nor supplant the requirement that to be a pollutant, a substance must be an irritant or contaminant.

¶ 28 "Waste" might be solid, liquid, gaseous, or a mixture of these. In common parlance, it is what remains after a substance has been used for its intended purpose. Not all waste is an irritant or contaminant. The policy does not provide a broad definition of "waste." Instead, it again provides a nonexclusive list. It says " 'waste' includes materials to be recycled, reconditioned or reclaimed." This definition makes it clear that "waste" is not limited to materials that are of no further use and are being discarded. In so doing, the definition does not render all waste to be a pollutant. To be a "pollutant," the insurance company must still prove that the waste was an irritant or contaminant.

¶ 29 Because I perceive no ambiguity in the policy language, I reject the plaintiffs' argument that we should rely on a dictionary definition of "pollutant" that says that the term is "especially" applicable to "a waste product of an industrial process."

¶ 30 Accordingly, the issue before us is whether there was a genuine issue of material fact about whether the sewage back-up in this case was an irritant or contaminant. *See Roinestad,* 300 P.3d at ——.

¶ 31 The policy does not define "irritant" or "contaminant." Here, we can resolve the issue by determining the meaning of "contaminant." To contaminate means "to soil, stain, corrupt, or infect by contact or association" or "to render unfit for use by the introduction of unwholesome or undesirable elements." *Webster's Third New International Dictionary* 491 (2002). A "contaminant" is "something that contaminates." *Id.*

¶ 32 Plaintiffs argue that "State Farm did not allege or present evidence that the sewage was an 'irritant.' " However, State Farm was not required to prove that the sewage was an irritant. Instead, it could opt to prove that the sewage was either an irritant or a contaminant, and, here, the policyholder did not dispute that it was a contaminant. The policyholder's motion for summary judgment admitted that evidence submitted to the arbitrator established that there had been a sewage back-up at the policyholder's rental property in 2002, and that it was deemed "a danger to life, limb, health and property." She also admitted that the tenants had proved that one of them was ultimately infected by parasites and/or bacteria that arose from the sewage backup.

¶ 33 The parties submitted their cross motions for summary judgment based on a stipulation that contained twenty-two para-

graphs and had nineteen attachments. The attachments included a copy of the arbitration award. The award states that the policyholder "admitted that she knew or reasonably should have known that the mold (mushrooms), collecting water and raw sewage presented an unreasonable risk to petitioners' health and safety." It also states, "The record reflects a back-up of raw sewage in the [policyholder's] house that occurred in 2002," and, "In addition to the raw sewage, the evidence demonstrated a long-term leaking and water collection problem." In the arbitration, the policyholder stipulated that she had violated section 13–21–115, C.R.S. 2011, and that she had created a dangerous condition. On this and other evidence, the arbitrator found that the tenants proved that "the residue of the sewage back-up and/or the leaked, collected water caused the harm [to the tenants]."

¶ 34 In my view, the parties presented the trial court with undisputed facts that established that the sewage that backed-up was a contaminant and that the tenant's bodily injury arose from its discharge, dispersal, spill, release, or escape. Accordingly, I concur with the majority that the trial court did not err when it granted summary judgment to State Farm.