FILED
United States Court of Appeals
Tenth Circuit

January 27, 2011

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED FIRE & CASUALTY
COMPANY, an Iowa corporation,

      Plaintiff-Counterclaim Defendant–
      Appellee/Cross-Appellant,

v.

BOULDER PLAZA RESIDENTIAL,
LLC, a Colorado limited liability
company,

      Defendant-Counterclaim Plaintiff–
      Appellant/Cross-Appellee.

Nos. 10-1056 & 10-1075

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:06-CV-00037-PAB-CBS)**

George V. Berg, Jr. (Heidi C. Potter, and Judy B. Snyder with him on the briefs), Berg
Hill Greenleaf & Ruscitti LLP, Boulder, Colorado, for the Plaintiff-Counterclaim
Defendant–Appellee/Cross-Appellant.

Elizabeth C. Moran (Michael S. Drew, and Kevin P. Ahearn with her on the briefs), Pryor
Johnson Carney Karr Nixon, P.C., Greenwood Village, Colorado, for the Defendant-
Counterclaim Plaintiff–Appellant/Cross-Appellee.

Before **LUCERO**, **BALDOCK**, and **HOLMES**, Circuit Judges.

**LUCERO**, Circuit Judge.

Boulder Plaza Residential, LLC ("BPR") appeals the district court's grant of summary judgment for United Fire & Casualty Co. ("UFC"). In its order granting summary judgment, the district court held that under Colorado law, UFC, an insurer, owed no duty of defense, nor duty of indemnification. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

# I

## A

BPR, a real estate developer, and McCrery & Roberts Construction Co. ("M&R"), entered into a contract ("the General Contract"), in which M&R agreed to serve as the general contractor for the interiors of condominiums BPR was building in Boulder, CO. In the General Contract, M&R agrees to indemnify BPR:

> [F]rom and against claims, damages, losses, and expenses . . . arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting therefrom, but only to the extent caused in whole or in part by negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.

M&R then entered into a subcontract with Summit Flooring, LLC ("Summit"), whereby Summit agreed to install the hardwood floors in the condominiums. In the subcontract,

Summit agreed "to indemnify and save [M&R] harmless against all claims for damage to persons and property growing out of the execution of the work, including any costs and fees incurred by [M&R], should any claims be made."

Summit also obtained Commercial General Liability ("CGL") insurance policies from UFC, in which UFC agrees to pay for "bodily injury" or "property damage" caused by any "occurrence" which subjects Summit to liability. M&R, as the general contractor, was listed as an Additional Insured in the policies' Additional Insured Endorsements, which define the scope of coverage as follows:

> **Section II - Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule [M&R], but only with respect to your [Summit's] liability which may be imputed to that person or organization directly arising out of your ongoing operations performed for that person or organization. A person's or organization's status as an insured under this endorsement ends when your operations for that insured are completed.

The policies also contain a coverage grant under which UFC agrees to pay "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies," and which establishes UFC's "right and duty to defend the insured against any 'suit' seeking those damages."

Although the CGL policies exclude contractually assumed liability, they also contain two exceptions to that exclusion, providing coverage for damages: "(1) [t]hat the insured would have in the absence of a contract or agreement; or (2) [a]ssumed in a contract or agreement that is an 'insured contract'" entered into before the damages occur. "Insured contract" is defined in pertinent part as a contract "under which you

assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization."

**B**

Shortly after the sale of the Boulder condominiums, their new owners notified BPR of damage to the floors of the units. BPR, in turn, notified M&R. M&R's and Summit's subsequent efforts to repair the floors were unsuccessful. BPR sent M&R a notice of loss relating to the floor installation, which M&R forwarded to Summit. M&R then sent UFC a formal notice of claim and demand for indemnification as an Additional Insured under the CGL policies.

UFC investigated M&R's claim and concluded that the physical damage to the floors was caused by excessive moisture in the concrete floor and the wood floors at the time of installation, but that Summit's "work and floor adhesion was sound." UFC therefore denied coverage to M&R.

BPR filed a lawsuit in Boulder County District Court against M&R and Summit, alleging various claims, including breach of contract and negligence, relating to the installation of the wood floors by Summit. The owners of the condominiums also filed suit against M&R, Summit, and BPR. The two lawsuits were eventually consolidated. M&R notified UFC of the condominium owners' complaint against it and requested defense and indemnification under the CGL policies listing M&R as an additional insured. UFC responded with a letter in which it "den[ied] the tender of defense and indemnification to defend [M&R] related to the work performed by Summit" because the

policy only covered M&R with respect to "ongoing operations."

C

While the state action was pending, UFC filed this action in federal court, seeking a declaratory judgment that it had no duty to defend nor to indemnify M&R in state court. M&R subsequently settled the construction defect lawsuit, and assigned its claims against UFC to BPR. BPR, as M&R's assignee, filed counterclaims against UFC in this suit, alleging breach of the insurance contract and bad faith. BPR also pursued M&R's cross-claims against Summit through trial in state court, which resulted in the jury finding that Summit was not negligent and was not liable for the damages alleged by BPR.

In the declaratory action, UFC and BPR filed cross-motions for summary judgment on the issue of UFC's duty to defend M&R. UFC argued that it had no duty to defend M&R because M&R's coverage as an additional insured was limited to imputed liability arising out of the "ongoing operations" of UFC's named insured, Summit. That obligation ceased once Summit's operations were completed. According to UFC, the complaints in the underlying action alleged that damage to the floors was first observed only after Summit had completed installation. As the endorsement did not cover M&R for liability arising out of completed operations, UFC contended that it had no duty to defend M&R.

The district court denied UFC's motion, and granted summary judgment for BPR, ruling that the complaints sufficiently alleged damage to the floors during improper installation, thereby triggering a duty to defend M&R under the UFC policy. UFC's

-5-

motion for reconsideration was denied.

Next, the parties filed summary judgment cross-motions on the issue of UFC's duty to indemnify M&R. On that issue, the district court granted BPR's motion and held that UFC was obligated to indemnify M&R for liability under the CGL policies.

UFC then filed a second motion for reconsideration of the duty-to-defend order, based primarily on a subsequent decision by the Colorado Court of Appeals, General Security Indemnity Co. of Arizona v. Mountain States Mutual Casualty Co., 205 P.3d 529 (Colo. App. 2009). UFC's motion for reconsideration was granted in part on the ruling that, under General Security, the complaints alleged only damages from faulty workmanship and there was therefore no "occurrence" within the definition of UFC's policy. As a consequence, the district court concluded neither UFC's duty to indemnify, nor its duty to defend was triggered. BPR filed a notice of appeal and UFC filed a notice of a conditional cross-appeal.

## II

We review the district court's grant of summary judgment de novo. Shero v. City of Grove, 510 F.3d 1196, 1200 (10th Cir. 2007). Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).

We also review the district court's interpretation of Colorado law de novo. Mincin v. Vail Holdings, Inc., 308 F.3d 1105, 1108-09 (10th Cir. 2002). Under Colorado law, the interpretation of an insurance contract is a matter of law and is therefore reviewed de

novo.  <u>Compass Ins. Co. v. City of Littleton</u>, 984 P.2d 606, 613 (Colo. 1999).

## III

## A

Under Colorado law, the duty of an insurer to defend its insured (or additional

insured) is distinct from its duty to indemnify the insured.  <u>Hecla Mining Co. v. N.H. Ins.</u>

<u>Co.</u>, 811 P.2d 1083, 1086 n.5 (Colo. 1991).  "The duty to defend concerns an insurance

company's duty to affirmatively defend its insured against pending claims."  <u>Cyprus</u>

<u>Amax Minerals Co. v. Lexington Ins. Co.</u>, 74 P.3d 294, 299 (Colo. 2003) (quotation

omitted).  In contrast, the:

> [D]uty to indemnify relates to the insurer's duty to satisfy a judgment entered
> against the insured.  Because the duty to defend encompasses any potential claims
> raised by the facts and the duty to indemnify relates to the actual liability imposed,
> [the Colorado Supreme Court] has considered the duty to defend to be a broader
> concept than the duty to indemnify."

<u>Id.</u> (citations omitted).

"An insurer seeking to avoid its duty to defend an insured bears a heavy burden."

<u>Hecla</u>, 811 P.2d at 1089.  "The actual liability of the insured to the claimant is not the

criterion which places upon the insurance company the obligation to defend.  Rather, the

obligation to defend arises from allegations in the complaint, which if sustained, would

impose a liability covered by the policy."  <u>Id.</u> (quotation and footnote omitted).

> The insurer has a duty to defend unless the insurer can establish that the
> allegations in the complaint are solely and entirely within the exclusions in
> the insurance policy.  An insurer is not excused from its duty to defend
> unless there is no factual or legal basis on which the insurer might
> eventually be held liable to indemnify the insured.

Id. at 1090 (citation omitted). In order to determine whether an insurer owes a duty to defend an insured, Colorado courts apply the "complaint" or "four corners" rule. See Cyprus Amax, 74 P.3d at 299. The duty to defend "arises when the underlying complaint against the insurer alleges any facts that might fall within the coverage of the policy." Hecla, 811 P.2d at 1089 (citations omitted, emphasis added).

In granting UFC's motion for summary judgment with respect to both the duty to defend and duty to indemnify, the district court relied upon the Colorado Court of Appeals' interpretation of "occurrence" in General Security, 205 P.3d 529. In the context of tort and breach of warranty claims, the Colorado Court of Appeals held that "a claim for damages arising from poor workmanship, standing alone, does not allege an accident that constitutes a covered occurrence, regardless of the underlying legal theory pled." Id. at 534. Instead an "'accident' and 'occurrence' are present when consequential property damage has been inflicted upon a third party as a result of the insured's activity." Id. at 535. Consequently, if a complaint alleges damage resulting only from work performed by the insured, there is no accident and therefore no occurrence.

This court has held that "where jurisdiction rests solely on diversity of citizenship and there is no controlling decision by the highest court of a state, a decision by an intermediate court should be followed by the Federal court, absent convincing evidence that the highest court would decide otherwise." Webco Indus., Inc. v. Thermatool Corp., 278 F.3d 1120, 1126 (10th Cir. 2002) (ellipsis in original omitted). Therefore, the

-8-

General Security interpretation of "occurrence" would, in normal circumstances, govern this case.

However, in response to General Security, the Colorado Legislature enacted Colo. Rev. Stat. § 13-20-808. Explicitly critiquing the restrictive interpretation of "accident" adopted by the General Security court, § 13-20-808 provides that "in interpreting a liability insurance policy issued to a construction professional, a court shall presume that the work of a construction professional that results in property damage, including damage to the work itself or other work, is an accident." Id. The statute "applies to all insurance policies currently in existence or issued on or after [its] effective date [of May 21, 2010]." Id. (emphasis added). To determine the applicability of § 13-20-808, it would therefore be necessary to parse the meaning of "currently in existence," which is not defined in § 13-20-808.

Fortunately, we need not contemplate the meaning of "existence." We may resolve the issues of whether UFC owed M&R a duty to defend or a duty to indemnify without reference to General Security or § 13-20-808.

**B**

Although the district court granted UFC's motion for summary judgment in part, it declined to disturb its earlier ruling that the underlying complaints sufficiently alleged damages occurring within the period of the "ongoing operations" language of the additional insured endorsement. UFC contends on conditional cross-appeal that this was error.

UFC advances its "ongoing operations" argument in a conditional cross-appeal. [1] Nonetheless we treat this argument as an alternative basis for affirming the district court's grant of summary judgment for UFC on the duty-to-defend issue. We have held that an "appellee may, without filing a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court." Ute Distrib. Corp. v. Sec'y of Interior, 584 F.3d 1275, 1282 (10th Cir. 2009) (quotation omitted); see 15A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3904, at 199-201 (1992) ("Cross-appeal is unnecessary even with respect to matters that have been put aside by the district court, or matters that have been explicitly rejected by the district court."); cf. TypeRight Keyboard Corp. v. Microsoft Corp., 374 F.3d 1151, 1157 (Fed. Cir. 2004) ("[W]e dismiss the cross-appeal . . . and treat Microsoft[']s arguments in support of its cross-appeal as an alternate ground for affirming the district court[']s judgment." (footnote omitted)); Nanavati v. Burdette Tomlin Mem'l Hosp., 857 F.2d 96, 102 (3d Cir. 1987) ("Because [cross-appellants] are completely satisfied with the final judgment and object only to interlocutory rulings of the district court, we lack jurisdiction over their appeal. However, we have treated the issues raised in the cross-appeal as alternative grounds for affirmance of the district court's judgment." (citation omitted)).

UFC's policy was issued to Summit, not M&R. Under the policy, M&R is an

[1] UFC suggests we only need reach this question should we reverse the district court's General Security-based order.

"additional insured," and is therefore covered "only with respect to [Summit's] liability which may be imputed to [M&R] directly arising out of [Summit's] ongoing operations performed for [M&R]." In Weitz Co., LLC v. Mid-Century Insurance Co., 181 P.3d 309 (Colo. App. 2007), the Colorado Court of Appeals considered a similarly worded additional insured endorsement. About a year after the subcontractor in Weitz completed its work, the property owner observed damage to its floors. Id. at 311. An additional insured endorsement provided coverage to the general contractor for the subcontractor's operations "only with respect to liability arising out of [the subcontractors] ongoing operations performed for that insured." Id. As in this case, the property owner filed action against the general contractor and the general contractor sought a defense to the insurer, which the insurer partially denied.

Weitz holds that the words "only" and "ongoing operations" used in conjunction result in more limited coverage for the additional insured general contractor vis-à-vis the insured subcontractor. Id. at 313. Coverage for "ongoing operations" is distinct from coverage for "completed operations" or "completed work." Id. Therefore, "under the plain and ordinary meaning of 'arising out of your ongoing operations' the endorsement to the policy d[id] not cover 'completed operations,' and the insurer ha[d] no duty to defend or indemnify the general contractor." Id. at 315.

As in Weitz, any claimed damage in this case was alleged to have arisen after operations were completed. With respect to an occurrence policy such as UFC's, Colorado courts have held that "coverage is triggered only if a third party suffered actual

-11-

damage within the policy period." Globe Indem. Co. v. Travelers Indem. Co. of Ill., 98 P.3d 971, 974 (Colo. App. 2004). Under Colorado law, there is therefore a dispositive distinction between the timing of the wrongful act and the time of actual damage. "The time of the occurrence of an accident is not the time the wrongful act was committed but the time when the complaining party was actually damaged." Id. (alteration omitted). For example, the Colorado Supreme Court held that an "accident" occurred not when a gas pipeline was negligently installed, but when it actually exploded. Samuelson v. Chutich, 529 P.2d 631, 633-35 (Colo. 1974). "To stretch the scope of 'accident' backward in time to reach the date of the earliest beginning of any prior event which might be regarded as having a causal relation to the unlookedfor [sic] mishap would introduce ambiguity where none now exists." Id. (quotation omitted). The physical manifestation of damage and not improper installation or other faulty workmanship is the trigger for coverage.

BPR's underlying complaint against M&R contained the following pertinent allegations of damage:

> 33. Summit began installing the floor boards in the Units at One Boulder Plaza on or about November 2002, and it completed the installation process on or about April, 2003.

> 34. Shortly after installation was complete, many of the floors installed . . . began to exhibit signs of cupping, or upward warping of the outside edges of the floor boards.

> . . . .

> 36. Subsequent to the floors cupping, the floors in many of the Units began

-12-

to exhibit signs of disbondment, panelization, and splitting.

(Emphasis added). Under Weitz, these allegations refer to completed, rather than ongoing operations, and that ends the matter.

In arguing otherwise, BPR essentially asks this court to transform UFC's commercial general liability policy into a performance bond. "CGL insurance protects businesses from third party claims for personal injury or property damage resulting from accidents." Hoang v. Assurance Co. of Am., 149 P.3d 798, 802 (Colo. 2007). A performance bond, in contrast, guarantees the contractor will satisfactorily perform the contract. 17 Am. Jur. 2d Contractors' Bonds § 1 (2010). That is why, in Colorado, "[t]he risk that an owner might reject performance as inadequate is a 'business risk' allocated by parties in contract, and is insured by a performance bond, not general liability insurance intended to provide coverage for injuries or damage resulting from 'accidents.'" DCB Constr. Co. v. Travelers Indem. Co. of Ill., 225 F. Supp. 2d 1230, 1231 (D. Colo. 2002).

Because the allegations fail to indicate any "factual or legal basis on which the insurer might eventually be held liable to indemnify the insured," UFC did not owe M&R a duty of defense. Hecla, 811 P.2d at 1090. For this reason, we need not decide whether Colo. Rev. Stat. § 13-20-808 applies to this case. Regardless of what damage the complaint needed to allege, it only alleged damage that occurred after the installation was complete. Accordingly, nothing in the four corners of the complaint alleged damage arising from Summit's "ongoing operations," and UFC therefore had no duty to defend.

**C**

-13-

BPR asks us to look beyond the complaint's four corners, arguing that UFC's duty-to-defend was triggered by information in two additional documents. First, BPR points to a letter from a UFC claims adjuster to M&R that refers to "the resulting damage to the flooring and subsequent damage to the units" arising from the improper installation of the floors. Second, BPR cites UFC's Liability Cap Report which refers to claims of property damage "due to the high moisture content of the concrete slab [which resulted in] damage to the interior floors, trim, windows, doors, cabinets, drywall and wainscoting."[2]

As a general rule under Colorado law, an insurer's duty to defend an insured is triggered solely on the basis of the allegations made within the four corners of the complaint, read against the insurance policy. The Colorado Supreme Court has "consistently held that an insurer's duty to defend arises solely from the complaint in the underlying action." Cotter Corp. v. Am. Empire Surplus Lines Ins. Co., 90 P.3d 814, 827 (Colo. 2004) (emphasis added). "When resolving an insurer's obligations in an anticipatory declaratory action brought before the conclusion of the underlying dispute, an insurer's duty to defend is determined from the face of the complaint." Id. at 828. A court "determining whether a duty to defend exists . . . must restrict its examination to the four corners of the complaint." Miller v. Hartford Cas. Ins. Co., 160 P.3d 408, 410

---

[2] Because we do not consider the content of UFC's Liability Cap Report, see infra, we need not resolve whether BPR waived any argument relating to the content of this document as UFC contends.

-14-

(Colo. App. 2007).

Despite Colorado courts' frequent admonishments to "solely" consider the allegations of the complaint, this court has twice predicted that the Colorado Supreme Court would recognize narrow exceptions to this general rule. See AIMCO v. Nutmeg Ins. Co., 593 F.3d 1188 (10th Cir. 2010); Pompa v. Am. Family Mut. Ins. Co., 520 F.3d 1139 (10th Cir. 2008).

In Pompa, we recognized an exception to the complaint rule, by which we will consider extrinsic evidence constituting "an indisputable fact that is not an element of either the cause of action or a defense in the underlying litigation." Id. The extrinsic evidence in that case was the insured's criminal conviction in another proceeding. Relying on a footnote in Cotter Corp., 90 P.3d at 829 n.9, we held that an insurer could look to a criminal conviction, and thus outside the four corners of the complaint, in assessing its duty to defend. Pompa, 520 F.3d at 1147. Our holding in Pompa is based on the expectation that the Colorado Supreme Court would recognize an exception to the complaint rule if an insured's complaint contained allegations made in bad faith and "framed to trigger an insurance policy." Id. We concluded that "judicially noticeable facts [such as a criminal conviction] are incorporated into the complaint. Because the district court could have taken judicial notice of [a criminal] conviction, that fact can be said to appear within the four corners of the complaint." Id. at 1149.

In AIMCO, we recognized a second exception, considering extrinsic evidence in the form of an "allegation contained in several separate but factually related complaints."

-15-

593 F.3d at 1190. The <u>AIMCO</u> court predicted that the Colorado Supreme Court would recognize a narrow exception to the four-corners rule "requiring an insurer to consider facts which it is aware of in parallel complaints that tend to show a duty to defend" as this "would not undercut an insured's legitimate expectation of a defense." <u>Id.</u> at 1194.

Neither of the exceptions recognized in <u>Pompa</u> or <u>AIMCO</u> applies in this case. Recognizing this inconvenient reality, BPR asks us to broaden "the exception to include consideration of extrinsic evidence not necessarily contained in another complaint, as long as the insurer had knowledge of such evidence when it denied coverage." We will not do that.

"[T]he responsibility of the federal courts, in matters of local law, is not to formulate the legal mind of the state, but merely to ascertain and apply it." <u>Hardy Salt Co. v. S. Pac. Transp. Co.</u>, 501 F.2d 1156, 1163 (10th Cir. 1974) (quotation omitted). The Colorado Supreme Court has articulated the complaint rule in categorical and unequivocal terms: "an insurer's duty to defend arises <u>solely from the complaint</u> in the underlying action." <u>Cotter Corp.</u>, 90 P.3d at 827 (emphasis added). Neither the Colorado Supreme Court nor Colorado's lower courts has thus far recognized any exceptions to this rule, nor has either ratified the two exceptions recognized by this Court in <u>Pompa</u> and <u>AIMCO</u>. We are therefore wary of embracing a third, much broader exception to the plain language of Colorado's complaint rule absent clear authority from Colorado's highest court. For this reason, we apply Colorado's complaint rule and hold that UFC's duty to defend could not have been triggered by BPR's extrinsic evidence.

## IV

Having determined that UFC did not owe BPR a duty of defense, we turn to the narrower question of whether UFC owed BPR a duty to indemnify. At first blush the answer is simple: no. The Colorado Supreme Court has repeatedly held that "[w]here there is no duty to defend, it follows that there can be no duty to indemnify." E.g. Compass Ins. Co., 984 P.2d at 621 (quotation omitted). Because UFC did not owe M&R a duty of defense, under that general rule there could be no duty to indemnify.

## A

Nonetheless, BPR contends that UFC <u>did</u> owe M&R a duty to indemnify because of obligations created in two separate documents: BPR's General Contract with M&R, and the Additional Insured endorsement in Summit's liability policy.

The General Contract provides that M&R "shall be responsible to [BPR] for acts and omissions of the [M&R's] employees, Subcontractors and their agents and employees, and other persons performing portions of Work under a contract with the Contractor." The Additional Insured Endorsement of Summit's policy with UFC provides:

> **Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule [M&R], but <u>only with respect to your [Summit's] liability which may be imputed to that person or organization [M&R]</u> directly arising out of your ongoing operations performed for that person or organization. A person's or organization's status as an insured under this endorsement ends when your operations for that insured are completed.

(Emphasis added). Thus in its contract with BPR, M&R assumed liability for acts and

-17-

omissions of M&R's subcontractor, Summit. UFC in turn agreed to insure M&R for Summit's "liability which may be imputed to" M&R. BPR contends, therefore, that liability "imputed to" M&R includes liability affirmatively assumed by M&R to BPR through the General Contract. We disagree.

The Colorado Supreme Court has repeatedly held that "[t]he duty to indemnify relates to the insurer's duty to satisfy a <u>judgment entered</u> against the insured." <u>E.g.</u> <u>Cyprus Amax</u>, 74 P.3d at 299 (emphasis added). Colorado courts' "consistent recognition that the trigger for the duty to indemnify must normally await a determination of actual liability presupposes that indemnity flows from the nature of the ultimate verdict, judgment or settlement." <u>Id.</u> at 301. In the event that a case proceeds through trial, "the court must look to the facts as they developed at trial and the ultimate judgment" in assessing whether an insurer owes the insured a duty to indemnify. <u>Id.</u>

In the underlying state court action, the jury found for Summit on all claims asserted by both BPR and M&R, and the verdict was affirmed on appeal. <u>See</u> <u>Boulder Plaza Residential, LLC v. Summit Flooring, LLC</u>, 198 P.3d 1217, 1218 (Colo. App. 2008). There was never a judgment against Summit, so Summit was not liable to anyone. It is that simple. BPR confuses <u>M&R's liability</u> arising from Summit's conduct with <u>Summit's liability</u> imputed to M&R. Irrespective of M&R's contractual obligations to BPR, Summit had no liability which could be imputed to M&R. Under <u>Cyprus Amax</u>, absent such liability, UFC's duty to indemnify cannot be triggered. <u>See</u> 74 P.2d at 301.

**B**

BPR advances another theory: that UFC owed M&R a duty to indemnify under a different provision of the CGL policies pertaining to "insured contracts." This provision provides coverage for insured contracts, which are defined as:

> That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

(Emphasis added).

BPR argues because M&R assumed contractual liability to BPR for property damage, the contract between BPR and M&R is an "insured contract" to which UFC's policies apply. This argument fails. Summit's insurance policy distinguishes between the "Named Insured," Summit, and the "Additional Insured," M&R. And the policy specifically states that terms "you" and "your" mean only the Named Insured.

Accordingly, the "insured contracts" provision only applies to the Named Insured. As an "Additional Insured," M&R's coverage is limited "to your [Summit's] liability which may be imputed to that person or organization [M&R] directly arising out of your ongoing operations performed for that person or organization." In interpreting similar language in Weitz, the court held that such terms limit coverage of the additional insured relative to that of the insured. See 181 P.3d at 313. Although Summit's coverage includes its own "insured contracts," M&R's coverage is limited exclusively to the liability of Summit which may be imputed to M&R.

**C**

Contrary to BPR's assertion, there is no conflict or inconsistency between the policy's provisions defining coverage. As opposed to the situation in which one insurance policy creates conflicting coverage and limitations for the <u>same</u> insured, <u>see,</u> <u>e.g.</u>, <u>Simon v. Shelter General Insurance Co.</u>, 842 P.2d 236, 239 (Colo. 1992), a CGL policy which specifically provides for a separate narrower grant of coverage for an additional insured general contractor relative to the insured subcontractor does not in itself create conflict. <u>Simon</u> has no bearing on this case.

## D

For the same reason, UFC owed BPR no duty to indemnify under the "tort liability exception" of the policy, which is liability "the insured would have in the absence of the contract or agreement." Once again, this coverage pertains to the insured, Summit, and not the additional insured, M&R, whose coverage is defined by the terms of the additional insured endorsement.

## V

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment for UFC with respect to both the duty to defend and duty to indemnify. The pending motion to certify a question to the Colorado Supreme Court is **DENIED**.