*715 EBEL, J.,
dissenting
I agree with the majority in many respects. For instance, I agree that this case turns on whether Landmark can establish that the Policy’s auto exclusion applies — i.e., whether Landmark can establish that the unloading process was not complete at the time of the accident because the Stairmaster was still “being moved from ... an ‘auto’ to the place where it [was to be] finally delivered.” Maj. Order 710. I also ágree that the district court did not violate the complaint rule, id. at 711-12, that Colorado’s “complete operation” doctrine is not limited to cases where its application would expand coverage, id. at 713-14, and that our unloading inquiry is the same under either the Policy’s definition of “loading or unloading” or the “complete operation” doctrine, id. at 713.
Despite these many points of agreement, I nonetheless write separately because I disagree with the majority’s dispositive conclusion that Landmark met its burden of establishing that the allegations in Ms. Tibbe’s underlying complaint are solely and entirely within the auto exclusion because the unloading process was not complete at the time of the accident. Id. at 712-13. Unlike the majority, I think Landmark failed to establish that Ms. Tibbe’s injuries fall exclusively within the auto exclusion because the terms “place” and “finally delivered” — which appear in the Policy’s definition of “loading or unloading” — are ambiguous and therefore must be construed in favor of VO. 1 Aplt. App. 211. When so construed, it is possible that the unloading process was complete at the time of Ms. Tibbe’s accident, which would render the Policy’s auto exclusion inapplicable. Because the mere possibility of coverage is sufficient to defeat Landmark’s motion for judgment on the pleadings, I would reverse on this basis alone.
However, even if the unloading process was not complete at the time of the accident, as the majority concludes, I think reversal is warranted for yet another reason — i.e., the absence of a causal relationship between VO’s “use” of an auto and Ms. Tibbe’s injuries. For the Policy’s auto exclusion to apply, Landmark must demonstrate not only that an auto was in “use” in the sense that the unloading process was not complete, but also that Ms. Tibbe’s injuries “ar[ose] out of’ that use. Id. at 201. To satisfy this causation standard under Colorado law, Landmark must demonstrate both a “but for” connection between the use of an auto and Ms. Tibbe’s injuries, and an unbroken causal chain between the use and the injuries. In my view, VO’s attempt to maneuver the Stairmaster up the stairs of Ms. Tibbe’s home broke the causal chain, rendering the Policy’s auto exclusion inapplicable. Accordingly, I would reverse for the additional reason that causation is lacking.
I. Discussion
At the highest level of generality, this appeal is about whether the district court correctly concluded that Landmark — an insurer — is entitled to judgment on the pleadings. We review the district court’s grant of a motion for judgment. on the pleadings de novo, accepting “all facts pleaded by the non-moving party as true and granting] all reasonable inferences from the pleadings in favor of the same.” Colony Ins. Co. v. Burke, 698 F.3d 1222, 1228 (10th Cir.2012). “A motion for judgment on the pleadings should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.” Id. (internal citations and quotation marks omitted).
*716 Importantly, in determining whether Landmark, as the moving party, is entitled to judgment as a matter of law, we must take into account the “heavy burden” that Landmark bears under Colorado law as an insurer seeking to avoid its duty to defend. United Fire & Cas. Co. v. Boulder Plaza Residential, LLC, 633 F.3d 951, 957 (10th Cir.2011) (quoting Hecla Min. Co. v. N.H. Ins. Co., 811 P.2d 1083, 1089 (Colo.1991)). As we have previously explained, the “actual liability of the insured to the claimant is not the criterion which places upon the insurance company the obligation to defend.” Id. Rather, the “insurer has a duty to defend unless the insurer can establish that the allegations in the [underlying] complaint are solely and entirely within the exclusions in the insurance policy.” Id. (emphasis added).
Thus, Landmark is not excused from its duty to defend VO — and therefore is not entitled to judgment on the pleadings— unless Landmark can establish that “there is no factual or legal basis ” upon which it “might eventually be held hable to indemnify” VO. Id. (emphasis added) (further explaining that an insurer must accept the defense of a claim when the underlying complaint against the insurer alleges any facts that might fall within the coverage of the policy). Unlike the majority, I believe that Landmark failed to establish that the allegations in Ms. Tibbe’s complaint fall exclusively within the auto exclusion for two reasons, either one of which warrants reversal.
a. In light of the factual allegations in Ms. Tibbe’s underlying complaint, it is possible that the unloading process was complete at the time of the accident because the Policy’s terms “place” and “finally delivered” are susceptible to more than one reasonable interpretation.
In order for Landmark to meet its burden of establishing that the allegations in Ms. Tibbe’s underlying complaint fall exclusively within the auto exclusion, Landmark must establish that, among other things, see infra 717-18, an auto was in “use” at the time of the accident. This requirement flows directly from the language of the Policy, which provides that Landmark has no duty to defend VO against suits seeking damages for bodily injury or property damage “arising out of’ the “use” of any “auto” operated by any insured. 1 Aplt.App. 201. The Policy defines “use” to include “loading or unloading,” and it further defines “loading or unloading” to include “the handling” of property ... [w]hile it is being moved from an ... ‘auto’ to the place where it is “finally delivered.” Id. at 201, 211. The Policy does not define “place” or “finally delivered.”
Emphasizing that Ms. Tibbe’s underlying complaint alleged that the VO employees “were in the process of handling the Stairmaster when they lost control of it,” the majority concludes that “the process of unloading was not complete at the time of the accident” because “VO had not completed delivery” of the machine. Maj. Order 713 (internal quotation marks omitted). The problem with this analysis, however, is that it improperly assumes the process of unloading the Stairmaster was necessarily not complete so long as the machine was being handled by VO. Such an assumption, however, fails to address the Policy’s definition of “loading or unloading,” which treats “the handling of property” as a condition precedent that triggers the definition of “loading or unloading” if such handling also occurs “While [the property] is being moved from an ... ‘auto’ to the place where it is finally delivered.” 1 Aplt. App. 211 (emphasis added).
Thus, to conclude, as the majority does, that the unloading process was not com- *717 píete at the time of the accident, VO’s handling of the Stairmaster must have occurred before the machine reached the “place” where it was to be “finally delivered.” To determine whether VO’s handling occurred in this way, we must construe the meaning of the terms “place” and “finally delivered,” which are not defined in the Policy. See Cotter Corp. v. Am. Empire Surplus Lines Ins. Co., 90 P.3d 814, 819-20 (Colo.2004) (explaining that courts apply principles of contract interpretation when construing insurance policies and specifying that where, as here, there is no evidence that the parties intended something different at the time of drafting, courts should give words their plain and ordinary meaning).
Webster’s defines “place” to mean a “specific locality,” Webster’s Third International Dictionary 1727 (3d. ed.1986), and “locality” is itself defined as “a particular spot, situation, or location.” Id. at 1327. Webster’s further defines “finally” to mean “the last act or occurrence in a series,” id. at 851, and “deliver” to mean “give, transfer: yield possession or control of,” id. at 597. “Control” is itself defined as “have power over” or “power or authority to guide or manage.” Id. at 496. Reading these definitions together and in the context of this case, the terms “place” and “finally delivered” are ambiguous because they are susceptible to more than one reasonable interpretation.[1] See Hecla, 811 P.2d at 1091.
On the one hand, these terms could reasonably be understood to mean that the process of unloading the Stairmaster was not complete at the time of the accident because: (1) the machine fell before it reached the second-story loft of Ms. Tibbe’s home, the “specific locality” or “particular spot” to which the machine was to be finally delivered; and (2) VO had physical “power over” the machine immediately before it fell, meaning that VO had not yet yielded control of the machine. On the other hand, however, these terms could also reasonably be understood to mean that the process of unloading the Stairmaster was complete at the time of the accident because: (1) the machine fell after arriving inside Ms. Tibbe’s home, the “particular location” to which the machine was to be finally delivered; and (2) Ms. Tibbe had “authority to guide or manage” how and where VO maneuvered the machine once it arrived inside her home, *718 meaning that VO had yielded control of the machine.
Because the language in the Policy is susceptible to more than one reasonable interpretation, it “must be construed in favor of the insured and against the insurer who drafted the policy.” Id. at 1090. Construing this language in favor of VO, I would conclude that it is possible that the unloading process was already complete at the time of the accident, thereby rendering the Policy’s auto exclusion inapplicable. Because the mere possibility of coverage is sufficient to defeat Landmark’s motion for judgment on the pleadings, United Fire, 633 F.3d at 957 (explaining that an insurer seeking to avoid its duty to defend must establish that there is no factual or legal basis upon which it might eventually be liable), I would reverse.
b. Ms. Tibbe’s injuries did not “aris[e] out of” the “use” of an “auto” because VO broke the causal chain when it attempted to maneuver the Stairmaster up the stairs.
Even assuming that the unloading process was not yet complete at the time of the accident, as the majority concludes, I would reverse for yet another reason — i.e., the absence of a causal relationship between the auto VO used to transport the Stairmaster and the injuries Ms. Tibbe sustained inside her home. Importantly, the Policy’s auto exclusion does not operate indiscriminately to bar coverage for all injuries sustained within spitting distance of an auto; rather, it bars coverage for injuries only arising out of the úse of an auto. 1 Aplt.App. 201. Thus, to meet its burden of proving that Ms. Tibbe’s injuries fall entirely within the Policy’s auto exclusion, Landmark must demonstrate not only that an auto was in “use” at the time of the accident in the sense that the unloading process was not complete, but also that Ms. Tibbe’s injuries were causally related to that use.
Although the Policy does not define “arising out of,” binding Colorado case law does. In Titan Construction Co. v. Nolf the Colorado Supreme Court considered whether injuries a driver sustained while discharging cement from a cement-truck were covered by an automobile insurance policy that contained similar “arising out of’ language. 183 Colo. 188, 515 P.2d 1123, 1124 (1973). Concluding that the driver’s injuries were indeed causally related to the cement truck, the court adopted a but-for test of causation that “is satisfied if the accident would not have occurred except for the unloading of the insured vehicle.” Id. at 1126. Since Titan, the Colorado Supreme Court has adhered to this but-for test and further clarified that its precedents interpreting the phrase “arising out of the use” in many different settings require “not only a ‘but for’ connection' between the ‘use’ of the vehicle and the claimant’s injury, but also an unbroken causal chain between that use and the injury.” State Farm Mut. Auto. Ins. Co. v. Kastner, 77 P.3d 1256, 1260-61, 1264 & n. 4 (Colo.2003) (emphasis added). Thus, even where but-for causation exists, the causal chain between the use of the vehicle and the injury may be broken by an “independent significant act or non-use of the vehicle.” Id. at 1264.
In light of this controlling Colorado law, I would conclude that the requisite causal connection is lacking here. Evening assuming that there is a “but for” connection linking VO’s “use” of an auto (which, per the Policy, encompasses the unloading process) to the injuries Ms. Tibbe sustained inside her home, causation is nonetheless lacking because the causal chain was broken the moment that the two VO employees began the “independent significant act” of maneuvering the Stairmaster up *719 the stairs of Ms. Tibbe’s home. This act— which would have been performed in the same manner whether VO had used an auto to transport the Stairmaster to Ms. Tibbe’s home or a Radio Flyer wagon— renders the auto exclusion inapplicable.[2]
Admittedly, VO did not argue lack of causation either before the district court or on appeal. And although we typically will not raise sua sponte such arguments, see United States v. Abdenbi, 361 F.3d 1282, 1290 (10th Cir.2004), I would be inclined to exercise our discretion to do so here, see Singleton v. Wulff, 428 U.S. 106, 121, 96 S.Ct; 2868, 49 L.Ed.2d 826 (1976). As the insurer seeking to avoid its duty to defend, Landmark bears the burden of establishing that the allegations in Ms. Tibbe’s underlying complaint fall solely and entirely within the Policy’s auto exclusion. Because the phrase “arising out of’ requires an unbroken causal chain between VO’s use of an auto and Ms. Tibbe’s injuries, Landmark simply cannot satisfy its heavy burden. This case thus presents one of those unique circumstances where we would be “justified in resolving an issue not passed on below” because “injustice” to VO will surely result where, as here, Landmark’s failure to satisfy its heavy burden “is beyond any doubt.”[3] Id.
II. Conclusion
Contrary to the majority, I do not think Landmark has met its heavy burden of establishing that it is entitled to judgment on the pleadings. Accordingly, I would reverse the district court’s order granting Landmark’s motion for judgment on the pleadings and remand for further proceedings.[4]

. The majority reaches the opposite conclusion, emphasizing that (1) the mere existence of the “complete operation” doctrine "functions to negate any ambiguity that might have otherwise existed in the phrase,” and (2) common definitions of "final” comport with "the common understanding of the word 'final' ” Maj. Order 713-14, 714 n. 3. I find both of these points unpersuasive. With respect to the first point, although the majority accurately notes that the Colorado Supreme Court interpreted the phrase "loading and unloading” when it adopted the complete operation doctrine in Titan Construction Co. v. Nolf, the Titan court did not explain what it meant for an insured to have "completed delivery” of goods under that doctrine. See 183 Colo. 188, 515 P.2d 1123, 1124-25 (1973) (rejecting the court of appeals’ conclusion that unloading was completed when cement came to rest in the hopper even though more cement was to be unloaded from the truck and explaining that unloading had not ceased under either the complete operation doctrine or the coming to rest doctrine). Because the Titan court did not substantively address the "completed delivery” language it used to describe the complete operation doctrine, language which tracks the Policy's "finally delivered” language, it is unclear how Titan sheds any additional light on the Policy terms at issue here. And, with respect to the second point, it is unclear why the majority’s observation regarding the word "final” itself establishes the absence of ambiguity when the phrase at issue here contains two other operative words (e.g., "place” and "delivered”). •

.By concluding that Landmark established that the auto exclusion bars coverage of Ms. Tibbe's injuries, the majority not only fails to acknowledge the Policy's causation requirement or to explain why this requirement is met, but also overlooks the reasonable expectations of insureds. See Bailey v. Lincoln Gen. Ins. Co., 255 P.3d 1039, 1048-49 (Colo.2011) (explaining that "the reasonable expectations of insureds” can succeed over exclusionary policy language "where an ordinary, objectively reasonable person would, based on the language of the policy, fail to understand that he or she is not entitled to the coverage at issue”). In my view, an objectively reasonable person would fail to understand that the Policy’s auto exclusion bars from coverage bodily injury and property damage that (1) was sustained inside a home, and (2) would have occurred in precisely the same manner regardless of whether an auto was used. See id.

. Of course, I recognize how unusual it is for this Court to address an argument not raised by a party. Doing so here, even if in a dissent, ensures that future litigants, unaware that VO failed to challenge causation, do not misinterpret the majority’s analysis as reading the causation requirement out of policies that, like the Policy here, tether coverage or exclusions from coverage to injuries "arising out of” specific circumstances.

. It follows that I would also reverse the district court’s summary denial of Appellants’ motion to amend counterclaims.